Richard D. Burbidge (#0492)
rburbidge@bmgtrial.com
Jefferson W. Gross (#8339)
jwgross@bmgtrial.com
Andrew Dymek (#9277)
adymek@bmgtrial.com
BURBIDGE MITCHELL & GROSS
215 South State Street, Suite 920
Salt Lake City, Utah 84111
Telephone: (801) 355-6677
Facsimile:  (801) 355-2341

Frank W. Compagni (#7174)
compagni@utahpatents.com
MORRISS O'BRYANT COMPAGNI, P.C.
734 East 200 South
Salt Lake City, Utah 84102
Telephone: (801) 478-0071
Facsimile:  (801) 478-0076
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| CONTOUR, LLC, a Utah limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> GOPRO, INC., a Delaware Corporation, CAMP SAVER, LLC, a Utah limited liability company, dba CAMPSAVER.COM, and DOES 1-500, <br><br> Defendants. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO GOPRO AND CAMP SAVER'S JOINT MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR INDIRECT AND WILLFUL INFRINGEMENT** <br><br> Civil No. 2:14-cv-00864-DBP <br><br> Judge Clark Waddoups <br><br> Magistrate Judge Dustin B. Pead |

# TABLE OF CONTENTS

PAGE

I.  INTRODUCTION .................................................................................................1

II.  BACKGROUND ................................................................................................3

*Procedural History* ....................................................................................................3

*Description and Components of the Claimed Invention* ...............................................4

*Infringing Products and Inducements* .........................................................................5

*Evidence that the SSAC Gave GoPro Effective Notice of Contour's Claims* ................ 9

III.  ARGUMENT ..................................................................................................10

A.  STANDARDS ON MOTION TO DISMISS ...................................................10

B.  ELEMENTS COMMON TO THE INDIRECT AND WILLFUL INFRINGEMENT

CLAIMS ...................................................................................................................11

      1.  Contour Has Pled Sufficient Knowledge of the Patents-in-Suit ..........................11

           a.  GoPro ignores the legal significance of Contour's supplementation
                pursuant to Rule 15(d) ..........................................................................11

           b.  Post-suit knowledge is sufficient for claims of indirect infringement ......15

           c.  The Court should adopt the line of cases holding that post-suit
                knowledge is sufficient to state a claim for willful infringement .............19

      2.  Plaintiff Has Adequately Pled Direct Infringement .............................................22

C.  CONTOUR HAS SUFFICIENTLY PLED EACH ADDITIONAL ELEMENT OF ITS
INDIRECT AND WILLFUL INFRINGEMENT CLAIMS ........................................... 25

      1.  Induced Infringement ..........................................................................................25

      2.  Contributory Infringement ..................................................................................28

           a.  The Components at Issue Have No Substantial Non-Infringing Use .......29

i

b.        Defendants Offer to Sell or Sell a Material Component of the
Invention ................................................................................................31

3.        Plaintiff Has Adequately Pled Willful Infringement ...........................................32

CONCLUSION ............................................................................................................................34

# TABLE OF AUTHORITIES

**CASES**                                                                                                                                    **PAGE**

*ACCO Brands, Inc. v. PC Guardian Anti-Theft Products, Inc.*,
   592 F. Supp. 2d 1208 (N.D. Cal. 2008) .................................................................................. 21

*Affinity Labs of Texas, LLC v. Alpine Electronics of Am., Inc.*,
   No. 9:08-CV-171, 2009 WL 9091275 (E.D. Tex. Sept. 2, 2009)............................................ 20

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).................................. 2, 22, 23, 24, 30

*Atwater Partners of Tex. LLC v. AT & T, Inc.*,
   No. 2:10-cv-175-TJW, 2011 WL 1004880, (E.D. Tex. Mar. 18, 2011).................................. 24

*Bel Fuse Inc. v. Molex Inc.*,
   27 F. Supp. 3d 557, 563 (D.N.J. 2014) .................................................................................. 31

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)..................... 2, 10, 22, 23, 24, 26, 30

*Black Hills Media, LLC v. Pioneer Corp.*,
   No. CV 13-05980 SJO (PJWx), 2013 WL 8540141 (C.D. Cal. Sept. 24, 2013)..................... 15

*Clouding IP, LLC v. Google Inc.*,
   No. 12-639-LPS, 2013 WL 5176702 (D. Del. Sept. 16, 2013) ............................................... 21

*Driessen v. Sony Music Entm't*,
   904 F. Supp. 2d 1196 (D. Utah 2012).................................................................. 18, 22, 24, 29

*Driessen v. Sony Music Entm't*,
   No. 2:09-cv-0140-CW, 2013 WL 4501063, (D. Utah Aug. 22, 2013).............................. 18, 30

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006).............................................................................................. 26

*Dubbs v. Head Start, Inc.*,
   336 F.3d 1194 (10th Cir. 2003) ............................................................................................. 10

*EmeraChem, Holdings, LLC v. Volkswagen Grp. of Am., Inc.*,
   No. 3:14-CV-132-PLR-HBG, 2014 WL 5795027 (E.D. Tenn. Nov. 6, 2014)........................ 31

*Erickson v. Pardus*,
    551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ...................................................... 10

*Execware, LLC v. Staples, Inc.*,
    No. 11-836-LPS-SFR, 2012 WL 6138340 (D. Del. Dec. 10, 2012) ........................................ 16

*Franks v. Ross*,
    313 F.3d 184 (4th Cir. 2002) ................................................................................................ 13

*Fujitsu Ltd. v. Belkin Int'l, Inc.*,
    782 F. Supp. 2d 868 (N.D. Cal. 2011) .................................................................................. 17

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010) ..................................................................................... 17, 28

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) ................................................ 15, 16, 17, 22, 23, 24, 26, 29, 30

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) ............................................................................ 19, 20, 21, 32, 33

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
    383 F.3d 1337 (Fed. Cir. 2004) ............................................................................................ 20

*Mallinckrodt, Inc. v. E-Z-Em Inc.*,
    670 F. Supp. 2d 349 (D. Del. 2009) ...................................................................................... 17

*Mark IV Indus. Corp. v. Transcore, L.P.*,
    75 Fed. R. Serv. 3d 393 (D. Del. 2009) ................................................................................ 31

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007) ............................................................................................ 23

*Medtrica Solutions, Ltd. v. Cygnus Med., LLC*,
    No. C12-528RSL, 2012 WL 5726799 (W.D. Wash. Nov. 15, 2012) .................................... 33

*Medtronic Vascular, Inc. v. Boston Scientific Corp.*,
    348 F. Supp. 2d 316 (D. Del. 2004) ...................................................................................... 25

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) .............................................. 26, 28

*Milwaukee Elec. Tool Corp. v. Hitachi Koki, Ltd.*,
    No. 09-C-948, 2011 WL 665439 (E.D. Wis. Feb. 14, 2011) ................................................ 33

*MyMedicalRecords, Inc. v. Jardogs, LLC*,
   1 F. Supp. 3d 1020, 1024-25 (C.D. Cal. 2014) ....................................... 16, 20, 22, 33

*Netgear, Inc. v. Ruckus Wireless, Inc.*,
   852 F. Supp. 2d 470 (D. Del. 2012) .......................................................................... 27

*Nielsen Co. (US), LLC v. comScore, Inc.*,
   819 F. Supp. 2d 589 (E.D. Va. 2011) ............................................................... 30, 31

*Nomadix, Inc. v. Hospitality Core Servs. LLC*
   No. CV 14-08256 DDP (VBKx) 2015 WL 1525537, (C.D. Cal. Apr. 3, 2015) ..................... 27

*OpenTV, Inc. v. Apple, Inc.*,
   No. 14-cv-01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) .............................. 20, 33

*Proxyconn Inc. v. Microsoft Corp.*,
   No. SACV 11-1681 DOC (ANx), 2012 WL 1835680 (C.D. Cal. May 16, 2012) .................. 16

*Radware, Ltd. v. A10 Networks, Inc.*,
   No. C-13-02021-RMW, 2013 WL 5373305 (N.D. Cal. Sept. 24, 2013).................................. 17

*Rembrandt Soc. Media, LP v. Facebook, Inc.*,
   950 F. Supp. 2d 876 (E.D. Va. 2013) ....................................................... 15, 19, 21

*Ruiz v. McDonnell*,
   299 F.3d 1173 (10th Cir. 2002) ........................................................................ 10, 29

*Sony Corp. v. LG Electronics U.S.A., Inc.*,
   768 F. Supp. 2d 1058, 1064 (C.D. Cal. 2011) ....................................................... 33

*St. Clair Intellectual Prop. Consultants, Inc. v. Palm, Inc.*,
   No. 06-404-JJF-LPS, 2009 WL 1649751 (D. Del. June 10, 2009)............................................ 21

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
   174 F. Supp. 2d 388 (D. Md. 2001) ....................................................................... 13

*Swanson v. Bixler*,
   750 F.2d 810 (10th Cir. 1984) ................................................................................. 10

*Telecomm Innovations, LLC v. Ricoh Co.*,
   966 F. Supp. 2d 390 (D. Del. 2013)...................................................................... 26, 27

*Trintec Industries, Inc., v. Pedre Promotional Product*, Inc.,
   395 F.3d 1265, 1280 (Fed. Cir. 2005)..................................................................... 2, 3

*Water Technologies Corp. v. Calco, Ltd.*,
   850 F.2d 660 (Fed. Cir. 1988).................................................................................. 26

*Wells v. Harris*,
   185 F.R.D. 128 (D. Conn. 1999)............................................................................... 14

*Wyeth v. Sandoz, Inc.*,
   703 F. Supp. 2d 508 (E.D.N.C. 2010)....................................................................... 26

*Xpoint Technologies, Inc. v. Microsoft Corp.*,
   730 F. Supp. 2d 349 (D. Del. 2010) ......................................................................... 17

*Zond, Inc. v. Fujitsu Semiconductor Ltd.*,
   990 F. Supp. 2d 50 (D. Mass. 2014) ......................................................................... 14

**Statutes**

35 U.S.C.A. § 271(c) .................................................................................................. 28, 32

**Rules**

Fed. R. Civ. P. 8(a)(2)................................................................................................. 10, 33

Fed. R. Civ. P. 12(b)(2)....................................................................................................... 3

Fed. R. Civ. P. 12(b)(3)....................................................................................................... 3

Fed. R. Civ. P. 12(g)(2)....................................................................................................... 3

Fed. R. Civ. P. 12(h)(1)....................................................................................................... 3

Fed. R. Civ. P. 15(d) ............................................................................................... 12, 13, 14

Fed. R. Civ. P. 84.............................................................................................................. 23

**Other Authorities**

6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure,
   § 1505 (1990)....................................................................................................... 13

Plaintiff Contour, LLC ("Plaintiff" or "Contour"), by and through its counsel of record, hereby submits this memorandum in opposition to Defendants' joint motion to dismiss Contour's claims for indirect and willful infringement.

## I.

## <u>INTRODUCTION</u>

Defendants' motion to dismiss Contour's claims for indirect and willful infringement lacks merit and should be denied. Defendants' principal argument is that Contour failed to plead that Defendants had knowledge of the patents-in-suit prior to the time this lawsuit was initiated, and "such pre-suit knowledge is a prerequisite to any indirect or willful infringement claim." (Def. Mem. at 2.) Defendants are wrong. A wide majority of courts have held that post-suit knowledge (e.g., knowledge provided by the filing of the lawsuit) of the patents-in-suit satisfies the knowledge element of an indirect infringement claim. Likewise, the better-reasoned cases have held that post-suit knowledge is sufficient for a willful infringement claim. As courts have recognized, requiring pre-suit knowledge would confer a "strange reward" on Defendants by giving them *carte blanche* to engage in indirect and willful infringement during the litigation, just because they were allegedly ignorant of the patents-in-suit prior to being served with the complaint.

Moreover, in an abundance of caution, Contour successfully moved to supplement its complaint with allegations that GoPro gained knowledge of the patents-in-suit, at the latest, when it was served with an earlier version of the complaint, to which the patents-in-suit were attached. By so doing, Contour left no room for doubt that it properly pled the knowledge element of its indirect and willful infringement claims against GoPro.

Defendants also seek dismissal of the indirect infringement claims based on a frivolous argument that Contour allegedly did not sufficiently plead predicate acts of direct infringement by third parties. Notably, although Contour's allegations of direct infringement by third parties closely track their allegations of direct infringement by Defendants, Defendants do not dispute the adequacy of these latter allegations and have not moved for the dismissal of the direct infringement claims against them. Further, Contour's allegations of direct infringement by third parties are far more detailed than the model complaint for direct infringement that has been endorsed as sufficient by the Federal Circuit.

Defendants' remaining arguments concern the sufficiency of the allegations of the other elements of the indirect and infringement claims. These arguments lack merit. In making these arguments, Defendants give lip service to federal pleading standards but apply a cynical standard of their own making. Contrary to federal standards, Defendants demand specific facts, attempt to contradict Contour's allegations with unsworn averments (e.g., about alleged non-infringing uses of their cameras), fail to view the factual allegations and inferences therefrom in the light most favorable to Contour, and draw inferences in their own favor. As the cases make clear, *Twombly* and *Iqbal* did not change the rule that a complaint need only give fair notice of what the claim is and the grounds upon which it rests. Contour's supplemental and second amended complaint meets and exceeds this requirement.[1]

---

[1] Defendants assert, without foundation, that Contour apparently sued Camp Saver "simply to create a basis for jurisdiction in this district." (Def. Mem. at 3.) This assertion is false and irrelevant to the merits of this motion. The questions of whether this Court has subject matter jurisdiction over a case arising under federal patent laws or personal jurisdiction over GoPro, or whether venue is appropriate in this district, are not dependent on the presence of Camp Saver as a defendant. "Venue in a patent action against a corporate defendant exists whenever there is personal jurisdiction.*" Trintec Industries, Inc., v. Pedre Promotional Product*, Inc., 395 F.3d

**Procedural History**

1.      On November 18, 2014, United States Patent No. 8,890,954 (the "'954 Patent"), entitled "Portable Digital Video Camera Configured for Remote Image Acquisition, Control and Viewing" was issued to Contour, as assignee.  Contour is currently the owner and possessor of all rights pertaining to the '954 Patent.  (SSAC, ¶ 13.)

2.      On November 25, 2014, United States Patent No. 8,896,694 (the "'694 Patent"), entitled "Portable Digital Video Camera Configured for Remote Image Acquisition, Control and Viewing" was issued to Contour, as assignee.  Contour is currently the owner and possessor of all rights pertaining to the '694 Patent.  (SSAC, ¶ 14.)  The '954 and '694 patents are referred herein collectively as the "patents-in-suit".

3.      Contour filed its original complaint on November 25, 2014, naming Camp Saver and Does as Defendants.  The patents-in-suit were attached to the complaint.  (*See* Dkt. No. 2.)

4.      On January 5, 2015, Contour filed a First Amended Complaint (the "FAC") adding GoPro as a Defendant.  The patents-in-suit were attached to the FAC.  (*See* Dkt. No. 4.)

5.      That same day, GoPro was served with the FAC and attached patents-in-suit. (*See* Dkt. 7, and Ex. 1.)

6.      After receiving a letter from GoPro on February 3, 2015, concerning alleged deficiencies of the FAC, Contour moved to file a Supplemental and Second Amended Complaint

---

1265, 1280 (Fed. Cir. 2005).  Defendants have waived any objections on the basis of personal jurisdiction and venue by not raising them in their motion to dismiss.  *See* Fed.R.Civ.P. 12(b)(2)-(3); Fed.R.Civ.P. 12(g)(2); Fed.R.Civ.P. 12(h)(1).

(the "SSAC").  The motion to supplement was filed on February 17, 2015, and was not opposed by GoPro.  (*See* Dkt. Nos. 19 & 24.)  The motion to supplement was granted by the Court on March 26, 2015.  (*See* Dkt. No. 28.)

7. The SSAC was filed on March 27, 2015.  GoPro was immediately served with the SSAC through the Case Management/Electronic Case Files ("CM/ECF") system.  The patents-in-suit were attached to the SSAC.  Camp Saver was personally served with the SSAC and attachments that same day.  (*See* Dkt. Nos. 29-30, and Ex. 2.)

**Description and Components of the Claimed Invention**

8. As stated in the SSAC, Contour is a maker and seller of wearable and gear-mountable camera products, including the Contour+2, which practices the patented invention.  (*See* SSAC, at ¶ 18.)

9. The patents-in-suit were attached to the Complaint, FAC and SSAC.  The opening line of the Abstracts on the faces of the '954 patent and the '694 patent reads as follows:  "A wearable digital video camera (10) is equipped with wireless connection protocol and global navigation and location positioning system technology to provide remote image acquisition control and viewing."  (*See* Dkt. Nos. 2-1, pp. 2; 2-2, p. 2.)

10. The drawings in the patents-in-suit highlight the wireless connection protocol of a main processor in the hardware of a POV camera that captures, streams and then stores data to respond to a mobile software app executed on a mobile device.  (*See* patent drawings of the '954 & '694 patents at Dkt. Nos. 2-1, pp. 29, 40; 2-2, pp. 29, 40.)

11. Features of the claimed invention include a sleek design, mountability and use in action settings, sports settings, or rugged environments wherein the camera "is often mounted in

a location that does not permit the user to easily see the camera." (*See* Dkt. Nos. 2-1, p. 50, col. 19; 2-2, p. 50, col. 19.) The claimed invention enables remote control of the operation of a POV/action camera and remote access to the image data stored in the video camera. (*Id.*)

12.     A wireless signal transfer written into the firmware and built into the main processor of the camera's hardware allows a remote device, such as a smartphone or tablet, to access data streaming from the digital POV camera. "Such data can include camera status, video, audio, or other data (e.g. GPS data) collected" by the camera. (*Id.*)

13.     The claimed invention references a wireless remote control and viewfinder involving "one or more of reduced resolution or frame rate, file sectioning, frame sampling . . . Reduced resolution or frame rate entails recording video in two formats, high quality and low quality, in which the lower quality file is streamed or played back after the recorded action has taken place." (*See* Dkt. Nos. 2-1, p. 50, col. 20; 2-2, p. 50, col. 20.)

**Infringing Products and Inducements**

14.     As stated in the SSAC, GoPro, Camp Saver and the Doe Defendants make, use, sell and/or offer for sale camera products (the "infringing products") in the United States that infringe at least one claim of the '954 Patent and at least one claim of the '694 Patent. (*See* SSAC, ¶ 19.)

15.     Specifically, the infringing products include the HERO3, the HERO3+ and HERO4 line of GoPro cameras ("cameras with wireless capability"). (*See* SSAC, ¶ 20.) This is exactly how GoPro refers to these cameras. (*See* Fact No. 16.)

16.     In this regard, attached as Exhibit 3 are screenshots taken on May 20, 2015 from GoPro's website, ("GoPro.com") showing that GoPro refers to the infringing lines of products as the HERO3, the HERO3+ and HERO4.  (*See* Ex. 3.)

17.     GoPro provides instructions on how to wirelessly view image data and control its cameras in the product manuals available for download on GoPro.com.  Specifically, each manual attached hereto provides instructions on how to connect a GoPro device to a smartphone or tablet via the GoPro App.  The user manuals also detail resolution and frames per second ("fps") as capture settings.  (*See* Ex. 4, User Manual HERO3 Silver at p. 22, 28, 46-47; Ex. 5, User Manual HERO3+ Black at p. 21, 27, 50-53; Ex. 6, User Manual HERO4 Black at p. 25, 53, 61.)

18.     Exhibit 7 is a screenshot taken May 28th, 2015 from the homepage of GoPro.com wherein GoPro advertises and recommends how to purchase and use cameras with wireless capability and the GoPro App. (*See* Ex. 7 & http://www.gopro.com.)  Exhibit 8 is a screenshot of the GoPro web page for the App taken May 8th, 2015 wherein GoPro says, "Get full remote control of all camera functions – take a photo, start/stop recording and adjust settings.  See what your camera sees with live preview for easy shot-framing."  (*See* Ex. 8, p. 1.)

19.     GoPro has an account on the social media website Twitter.com ("Twitter") using the handle @GoPro.  GoPro has approximately 1.41 million followers on Twitter.  (*See* Ex. 9, screenshot taken 05/28/15 & https://twitter.com/GoPro.)

20. Using Twitter GoPro has urged customers to "subscribe to our newsletter so you're the first to know" about the release of the app, and has responded to tweets inquiring about the app.[2] (*See* Ex. 10, screenshot taken 05/08/15 of GoPro's Twitter feed.)

21. Exhibit 11 is a portion of GoPro's Twitter feed advertising the GoPro app for iPhone and encouraging users to "Download our free mobile app for full camera control + live preview!" (*See* Ex. 11.)

22. In Exhibit 12, GoPro tweets, "Control. View. Share. With the GoPro App" and includes a link for download. (*See* Ex. 12, screenshot taken 05/08/15 of GoPro's Twitter feed.) Into 2015, GoPro continues to use Twitter to promote the use of cameras with wireless capability and GoPro App. (*See* Ex. 13, screenshot taken 05/08/15 of GoPro's Twitter post & picture.)

23. Through social media, GoPro also shares content highlighting the remote control and viewing features of the infringing GoPro cameras and App. In one such tweet, attached hereto as Exhibit 14, GoPro shares a video link from a news broadcast and article from San Diego: CBS 8 and captions the tweet as follows: "GoPro cameras and the GoPro App help take this little league team to another level." (*See* Ex. 14, screenshot taken 05/08/15 of GoPro's Twitter feed.) In the article and embedded video, GoPro Software Application Manager, Gene Higgs states, "We needed to have something that people could use and manipulate the camera without having to use the little menus on the camera." (*See* Ex. 15 &

http://www.cbs8.com/story/25571322/gopro-app-brings-video-analysis-to-new-easy-level#.U3wZyG-rejU.facebook .) (*video embedded*)

---

[2] Although this and some other posts in which GoPro teaches or recommends use of cameras with wireless capability pre-date the patents-in-suit, the posts remain searchable and active on the various social media websites.

24.     GoPro has an account on the social media website Facebook.com ("Facebook").

(*See* Ex. 16, screenshots taken 05/28/15 & https://www.facebook.com/gopro.)

25.     GoPro also advertises, promotes and demonstrates the use of the GoPro cameras

with wireless capabilities and App on Facebook by sharing in a post a YouTube video hyperlink

(https://www.youtube.com/watch?v=uVf6LRFI740) of two surfers using remote control and

viewing of the "awesomely handy GoPro App on an Indonesian surf trip."  (*See* Ex. 17,

screenshot taken 05/08/15 of GoPro's Facebook post & Ex. 22, Video A.)

26.     GoPro has a Youtube.com ("YouTube") channel with approximately 3,044,205

subscribers.  (*See* Ex. 18 screenshot taken 05/28/15 &

https://www.youtube.com/user/GoProCamera.)

27.     GoPro also has a YouTube channel specifically for tutorials and instruction where

there are detailed use tutorials of the infringing wireless functionality of the cameras, and has

129,615 subscribers. (*See* Ex. 19 screenshot taken 05/28/15 &

https://www.youtube.com/channel/UClwg08ECyHnm_RzY1wnZC1A)

28.     Posted on the GoPro Tutorial Channel are links to step-by-step videos instructing

users how to wirelessly connect to a GoPro camera for remote control and viewing.  Currently

available is a video entitled "The NEW GoPro App: Control. View. Share." instructing users

how and use the wireless viewing and control features of a GoPro HERO3+. (*See* Ex. 22, Video

B & https://www.youtube.com/watch?v=vOxnKpZ4Uag&index=19&list=PLXPbG7bw3k6P-vNgn3sSgE_lLgAqVCj65.)

**Evidence that the SSAC Gave Defendants Effective Notice of Contour's Claims**

29.     On April 9, 2015, subsequent to the March 27, 2015 service of the SSAC, Counsel representing both GoPro and Camp Saver moved for an extension of time to respond to the SSAC.  The motion was stipulated to by Contour.  (*See* Dkt. No. 31.)

30.     Less than two weeks after the request for extension and seven days before their response was due, GoPro served upon Contour two Petitions for *Inter Partes* Review (the "Petitions") of both the '954 and '694 patents in the United states Patent and Trademark Office. The Petitions are each over fifty pages long and include numerous attached exhibits and supporting documents.

31.     In the Petitions, GoPro requests a review of the two patents-in-suit arguing that they are allegedly obvious over the prior art.  Included in the Petitions are references to a (non-enabling) GoPro Sales Catalog from 2009 ("GoPro Catalog") that allegedly "discloses a POV camera that can record in multiple resolutions and wirelessly communicate with a remote controller to control the parameters of how a scene is recorded, including the ability to preview streaming video of the scene prior to recording it."  (*See* Ex. 20, relevant pages from the Petitions.)  The GoPro Catalog was attached as Exhibit GOPRO-1011 to the Petitions and states that HD MotorsportsHERO was to include, "Wireless Remote Control: Included built-in RF transceiver." (*See* Ex. 21 relevant Pages 2009 GoPro Catalog at p. 6.) [3]

---

[3] Although Contour disagrees with the Petitions on their merits, the Petitions embarrass any suggestion from GoPro that it does not have notice of the claims of the patents-in-suit and the nature of the patented invention.

# III.

# ARGUMENT

## A.    STANDARDS ON MOTION TO DISMISS.

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89 (2007) (citations and internal quotation marks omitted). A plaintiff meets its burden when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Although the Court in *Twombly* discussed the parameters of plausibility, it expressly stated that it was *not* imposing a heightened specificity standard.  *Twombly,* 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

On a Rule 12(b)(6) motion, the Court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).  "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984) (citation omitted).  Additionally, the Court "must view all reasonable inferences in the favor of the non-moving party." *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

Defendants ask the Court to dismiss Contour's claims for indirect infringement (i.e., induced and contributory infringement) and willful infringement. Each of these claims has distinct elements, but common to all the claims are the elements of (1) defendant's knowledge of the patents-in-suit, and (2) direct infringement. Contour will first address these common elements, then address the elements unique to each claim. As set forth below, Contour's pleadings are more than adequate to survive a motion to dismiss.

**B.     COMMON ELEMENTS**

**1.     Contour Has Pled Sufficient Knowledge of the Patents-in-Suit.**

Defendants argue that Contour's claims for induced, contributory, and willful infringement, as stated in the Supplemental and Second Amended Complaint ("SSAC"), should be dismissed because Plaintiff has allegedly failed to plead any factual allegations showing that Defendants had "pre-suit knowledge of the patents-in-suit." (Def. Mem., Dkt. No. 38, at pp. 2, 7-8, 11, 14.) Defendants' argument lacks merit and is based on the false premise that "pre-suit" knowledge is a requirement.

**a.     GoPro ignores the legal significance of Contour's supplementation pursuant to Rule 15(d).**

Contour attached the patents-in-suit to the First Amended Complaint ("FAC"), and alleged therein that defendants became aware of the patents-in-suit "at the latest, when they were served with this complaint." (FAC, ¶¶ 45, 52, 68, 75.) After GoPro was served with the FAC and attached patents-in suit on January 5, 2015, GoPro, through its counsel, requested and received 30 days to respond to the FAC. (*See* Dkt. No. 8.) Then, on February 3, 2015, GoPro sent Plaintiff a letter in which it specifically referenced the patents-in-suit, stated that it had reviewed the FAC and had "analyzed the various allegations and causes of action contained

therein," and requested that Contour dismiss all the claims except those for direct infringement. According to GoPro, the claims for induced and contributory infringement were subject to dismissal because, *inter alia*, Contour failed to allege that GoPro had "pre-suit knowledge" of the patent-in-suit.

In response, Contour moved to supplement its FAC pursuant to Fed. R. Civ. P. 15(d), to allege that GoPro had "continued to engage in acts of direct, induced, contributory, and willful infringement since it was served with the First Amended Complaint and undisputedly became aware of the patents-in-suit."  In its motion to supplements, Contour noted that while GoPro's contentions regarding "pre-suit knowledge" were highly debatable (because several federal courts have disagreed with GoPro), Contour was seeking leave to supplement to avoid the delays associated with a motion to dismiss.  After GoPro filed a response stating that it did not oppose the motion to supplement, the Court granted Contour leave to file the SSAC.  The SSAC, which was served on GoPro through CM/ECF on March 26, 2015, alleges that GoPro was aware of the patents-in-suit "since at least January 5, 2015," which is the date GoPro was "properly served with a Summons and a copy of the First Amended Complaint."  (SSAC, ¶¶ 15, 17.)  GoPro demonstrated that it received actual notice of the patents-in-suit, inter alia, by preparing and filing two 50-page Petitions for *Inter Partes* Review challenging the validity of the patents-in-suit. (*See* Background, ¶¶ 30-31.)

In light of this history, and the purpose behind Rule 15(d), the Court should rule that the SSAC sufficiently states claims of induced, contributory, and willful infringement based on GoPro's undisputed knowledge of the patents-in-suit since at least January 5, 2015.

To capture events occurring after the original filing and avoid the need to institute a new action, Rule 15(d) provides as follows:

> (d) Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.  The court may permit supplementation even though the original pleading is defective in stating a claim or defense.

Accordingly, Contour argued in its motion to supplement that "supplementation under Rule 15(d) is the appropriate response where, as here, one of the events [knowledge of the patents-in-suit] necessary to state a claim allegedly did not occur until after the filing of the Complaint."  (*See* Mot. to Suppl., at pp. 3-4) (citing, *inter alia*, *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co*., 174 F. Supp. 2d 388, 395 (D. Md. 2001) (granting motion to supplement complaint with allegations of "acts of infringement, inducement of infringement, and contributory infringement" subsequent to the filing of the complaint).

In lieu of supplementation, Contour could have filed a new lawsuit for induced, contributory, and willful infringement premised on GoPro's knowledge of the patents-in-suit since at least January 5, 2015, and then moved to consolidate the new lawsuit with this lawsuit. While highly inefficient, filing a new lawsuit would have undeniably satisfied GoPro's hypertechnical position with respect to "pre-suit knowledge."  But, as Contour stated in its motion to supplement, one of the main reasons Rule 15(d) was adopted was to avoid the "needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief."  6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure, § 1505 (1990); *Franks v. Ross*, 313 F.3d 184, 199 (4th Cir. 2002) (the "filing of a supplemental pleading is an appropriate mechanism for curing

numerous possible defects in a complaint."); *Wells v. Harris*, 185 F.R.D. 128 (D. Conn. 1999)

("The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between

the parties as possible by allowing the addition of claims which arise after the initial pleadings

are filed.").

In its response to the motion to supplement, GoPro did not dispute Contour's arguments

regarding the purpose or effect of Rule 15(d) as applied to the SSAC.  Likewise, in its motion to

dismiss, GoPro fails to offer any legal arguments addressing Rule 15(d) or Contour's position

that its supplementation pursuant to Rule 15(d) cured any alleged deficiencies as to GoPro's

knowledge of the patents-in-suit.  Further, GoPro ignores the cases applying Rule 15(d) that were

cited in Contour's motion to supplement, and fails to cite any cases holding that supplementation

is ineffective with respect to the alleged "pre-suit knowledge" requirement. GoPro's willful

blindness does not change the fact that supplementation cured any alleged deficiencies in the

FAC with respect to knowledge of the patents-in-suit.  Notably, even courts that ostensibly have

adopted a "pre-filing knowledge" requirement acknowledge "there is no bar to a plaintiff

subsequently amending a complaint to include a claim of induced infringement where the

defendant, upon obtaining knowledge through the filing of the lawsuit, of the patent and the

alleged direct infringement of others, does not cease inducement."  *See Zond, Inc. v. Fujitsu

Semiconductor Ltd.*, 990 F. Supp. 2d 50, 57-58 (D. Mass 2014) (stating that "as Zond has

amended its complaint, Fujitsu's post-complaint knowledge of the patents-in-suit and their use by

TSMC properly may be inferred.").

**b.    Post-suit knowledge is sufficient for claims of indirect infringement.**

As to indirect infringement, Defendants also fail to mention that their contentions

regarding "pre-suit knowledge" are at odds with Federal Circuit precedent.  In *In re: Bill of*

*Lading*, 681 F.3d 1323 (Fed. Cir. 2012), cited by Defendants*,* the Federal Circuit held that

allegations in amended complaints that Intermec, Microdea, and Qualcomm became aware of the

patent-in-suit at the latest when they were "served with the complaint" were sufficient to state a

claim for induced infringement and avoid a motion to dismiss.  *Id.* at 1344-46.

Likewise, Defendants fail to mention that in *Rembrandt Social Media, LP v. Facebook*

*Inc.,* 950 F. Supp. 2d 876, 881-82 (E.D. Va. 2013), cited by Defendants, the court surveyed the

holdings of federal district courts on the "knowledge requirement for indirect infringement," and

noted that the "majority of district courts considering the issue have held that post-suit

knowledge (i.e., knowledge provided by the filing of the lawsuit) satisfies the knowledge

element for indirect infringement."  *Id*. at 881.  Analyzing the rationale behind the majority and

minority views, the *Rembrandt* court adopted the latter, declaring that "[i]t is clear that the

majority view is the sounder view" because, among other things, there is "no sound reason that a

defendant should avoid liability for an indirect infringement claim when it continues to promote

infringing uses of their products after learning about the patents, simply because it happened to

learn of the patent in connection with a lawsuit."  *Id.* (citation and internal quotations omitted).

The minority view rejected in *Rembrandt* is rapidly disappearing as district courts

previously adhering to that view have revisited the knowledge requirement subsequent to the *Bill*

*of Lading* case.  *See, e.g.*, *Black Hill Media, LLC v. Pioneer Corp.,* No. CV 13-05980 SJO

(PJWx)*,* 2013 WL 8540141, *2 (C.D. Cal. Sept. 24, 2013) (unpublished) (holding that in

pleading indirect infringement, plaintiff need not allege pre-suit knowledge of patents in light of *Bill of Lading*). For a remarkable illustration of the disappearance of the minority view, consider the fate of the string of cases cited on page 8 of Defendants' memorandum from the Central and Northern Districts of California and the District of Delaware. Defendants contend that these cases support their argument that pre-suit knowledge of the patents-in-suit is allegedly required. However, all of these cases pre-date *Bill of Lading*, and later cases from the districts from which they issued have not followed their holdings regarding the knowledge requirement.

In *MyMedicalRecords, Inc. v. Jardogs, LLC*, 1 F. Supp. 3d 1020, 1024-25 (C.D. Cal. 2014), the Central District of California resoundingly rejected its prior unpublished decision in *Proxyconn, Inc. v. Microsoft Corp*., No. SACV 11-1681 DOC (ANx), 2012 WL 1835680, at *6 (C.D. Cal. May 16, 2012) (unpublished), cited by Defendants, and instead held that the filing of a complaint establishes the requisite knowledge of the patents-in-suit for purposes of stating claims of induced and contributory infringement. Decrying the "strange reward" that cases like *Proxyconn* provided to defendants who continued to engage in acts of indirect infringement after the filing of the complaint, the court stated as follows:

> A defendant should not be able to escape liability for post filing infringement when the complaint manifestly places the defendant on notice that it allegedly infringes the patents-in-suit. Holding otherwise would give a defendant *carte blanche* to continue to indirectly infringe a patent – now with full knowledge of the patents-in-suit – so long as it was ignorant to the patents prior to being served itself with the complaint. This strange reward would quickly erode the foundation upon which Congress constructed §271(b) and (c)'s liability structure.

*Id*. at 1025.

Likewise, in *Execwear, LLC v. Staples*, Inc., No. 11-836-LPS-SRF, 2012 WL 6138340, *4-5 (D. Del. Dec. 10, 2012) (unpublished), the District of Delaware rejected its earlier decisions

in *Xpoint Techs., Inc. v. Microsoft Corp*., 730 F. Supp. 2d 349, 357 (D. Del. 2010) and

*Mallinckrodt, Inc. v. E–Z–Em Inc*., 670 F. Supp. 2d 349, 354 (D. Del. 2009), both cited by

Defendants, and instead followed the "more recent line of cases" holding that "the filing of a

complaint is sufficient to provide knowledge of the patents-in-suit for purposes of stating a claim

for indirect infringement occurring after the filing date." Finally, Defendants' citation to *Fujitsu

Ltd. v. Belkin Int'l, Inc*., 782 F. Supp. 2d 868 (N.D. Cal. 2011), should be seen in light of

*Radwear, Ltd. v. A10 Networks, Inc*., No. C-13-02021-RMW, 2013 WL 5373305 (N.D. Cal.

Sept. 24, 2013) (unpublished), where the Northern District of California held that knowledge

obtained from the filing of suit suffices for a claim for indirect infringement. *Id*. at *2 (citing *Bill

of Lading*).

Defendants' reliance on inapposite and/or obsolete case law continues with its citation to

*Fujitsu Ltd. v. Netgear, Inc*., 620 F.3d 1321 (Fed. Cir. 2010). Defendants contend that in

*Netgear*, "the Federal Circuit has confirmed that pre-suit knowledge is necessary to successfully

assert a claim for contributory infringement." (Def. Mem. at p. 11.) Defendants are mistaken.

Rather, the *Netgear* court held, in the context of a motion for summary judgment, that there were

genuine issues of material fact relating to knowledge that precludes summary judgment of non-

infringement." *Id*. at 1330. *Netgear* never refers to a "pre-suit knowledge" or equivalent

requirement, and even if it did, the Federal Circuit did not require "pre-suit knowledge" in its

later case, *Bill of Lading*.

As *Bill of Lading* and other cases make clear, a plaintiff has a valid claim for indirect

infringement as long as it is plausible that the defendant had knowledge of patents at the time of

their alleged acts of indirect infringement, whether the acts occurred "pre-suit" or "post-suit."

There is no question that Contour has plausible claims for indirect (induced and contributory) infringement against GoPro and contributory infringement against Camp Saver. It is alleged in the SSAC and undisputed on this record that GoPro obtained knowledge of the patents-in-suit, at the latest, when it was served with the FAC. Contour also alleges that GoPro has continued to engage in acts of indirect infringement despite its knowledge of the patents-in-suit.

As for Camp Saver, Contour alleges that Camp Saver continues to commit acts of contributory infringement despite knowing that the products (e.g., HERO3, HERO3+, and HERO4 cameras) it offers for sale are especially made or adapted for use in direct infringement of the patents-in-suit. (SSAC, ¶¶ 19, 20, 63, 83.) Camp Saver's knowledge is thus clearly alleged. And, although Contour did not specifically allege that Camp Saver was served with the SSAC, Camp Saver was in fact served with the SSAC and attached patents-in-suit on the same day the SSAC was filed, (*see* Ex. 2), which further establishes Camp Saver's knowledge of the patents-in-suit. Thus, the Court should not dismiss Contour's claim for contributory infringement against Camp Saver. *See Driessen v. Sony Music Entm't*, 904 F. Supp. 2d 1196 (D. Utah 2013) ("*Driessen I*"), *vacated in part on other grounds* No. 2:09-cv-0140-CW, 2013 WL 4501063 (D. Utah August 22, 2013) (unpublished) ("*Driessen II*") (noting "the complaint does not allege that plaintiff gave defendant pre-suit notice of the alleged patent infringement, but courts have not found this to be a fatal pleading defect, as the filing of the complaint is sufficient to give a defendant notice of the alleged patent infringement"). At the very least, in light of the overwhelming authority in support of allowing amendments of complaints to assert claims of indirect infringement based on the knowledge of patents obtained through the filing of the suit, if

the Court finds Contour's allegations against Camp Saver in any way deficient on this point, the Court should grant Contour leave to amend its complaint.

### c. The Court should adopt the line of cases holding that post-suit knowledge is sufficient to state a claim for willful infringement.

Defendants also contend that that pre-suit knowledge of the patents-in-suit must be alleged to state a claim for willful infringement. In support of this contention, Defendants cite *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) and *Rembrandt*, *supra*.

In particular, Defendants note that *Seagate* states "willfulness claim asserted in an *original* complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." (Def. Mem. at p. 14) (emphasis added). This statement is inapposite. The original complaint is not before the Court, the SSAC is, and the Court granted Contour's motion to file the SSAC for the express purpose of capturing GoPro's conduct and knowledge subsequent to the first amended complaint. Further, as noted earlier, the SSAC clearly alleges Camp Saver's knowledge of the patents-in-suit. (*See supra*, p. 18.)

Moreover, in *Seagate*, the Federal Circuit anticipated that willful conduct could continue after the filing of the complaint, and should be redressable. The court stated, in dicta, that "when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct." *Id*.

Given that this language was dicta and highly-qualified, courts have held that *Seagate* does not preclude a plaintiff from basing a willfulness claim on post-filing knowledge and

conduct, regardless of whether it seeks an injunction.  In *MyMedicalRecords*, the court denied a

motion to dismiss a willful infringement claim that relied upon "a previous complaint in the

same lawsuit to establish a defendant's knowledge of the patents-in-suit." *Id*. at 1022.  In so

doing, the court squarely addressed, and rejected, the defendant's argument that "Federal Circuit

in *Seagate* precluded a plaintiff from establishing a willful-infringement claim based solely on

postfiling conduct if the plaintiff does not move for a preliminary injunction." *Id*. at 1026.

Emphasizing the importance of holding a defendant accountable for continuing acts of willful

infringement during the litigation, the court stated as follows:

> Since knowledge is required to subject a defendant to potential willful-
> infringement liability, knowledge should work both ways.  That is, if a plaintiff
> like MMR is able to establish the defendant's knowledge of the alleged
> infringement based on a prior, though superseded, complaint, the defendant
> should not be able to escape liability for conduct occurring after the plaintiff files
> its complaint. Holding otherwise would again give a defendant free rein to
> willfully infringe a patent of which it is now blatantly aware simply because a
> plaintiff chose not to move for a preliminary injunction.  Such a result would
> eviscerate the whole basis behind enhanced damages for willful infringement.
> *See Knorr–Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp*., 383 F.3d
> 1337, 1348 (Fed. Cir. 2004)  . . . .

> *To the same effect, see OpenTV, Inc. v. Apple, Inc*., No. 14-cv-01622-HSG, 2015 WL

1535328, * 8 (N.D. Cal. April 6, 2015) (unpublished) (denying motion to dismiss willful

infringement claim and holding that "Plaintiffs have alleged the required knowledge" with the

allegation "Apple has had knowledge and notice of [the patent and its infringement since at least

the filing and service of the original [and amended complaints,] and despite this knowledge

continues to infringe"); *Affinity Labs of Tex., LLC v. Alpine Elecs. of Am., Inc.*, No. 9:08-cv-171,

2009 WL 9091275 (E.D. Tex. Sept. 2, 2009) (unpublished) (denying motion to dismiss and

noting "there is no per se rule that a patentee who relies solely on post-filing conduct for his

willfulness claim is foreclosed from receiving enhanced damages if he does not also seek preliminary injunctive relief"); *ACCO Brands, Inc. v. PC Guardian Anti–Theft Prods., Inc*., 592 F. Supp. 2d 1208, 1227 (N.D. Cal. 2008) (rejecting argument that *Seagate* "stands for the proposition that a willful infringement claim cannot be based on alleged conduct after the filing of the lawsuit if the patentee does not file for a preliminary injunction."); *St. Clair Intellectual Property Consultants, Inc. v. Palm, Inc*., No. 06-404-JJF-LPS, 2009 WL 1649751 at *1 (D. Del. Jun. 10, 2009) (unpublished) (granting plaintiff's request to file an amended complaint adding a willfulness claim); *Clouding IP, LLC v. Google Inc.,* No. 12-639-LPS, 2013 WL 5176702, at *1 (D. Del. Sept. 16, 2013) (unpublished).

However in *Rembrandt*, cited by Defendants, the court extrapolated from *Seagate's* highly-qualified language and dicta and stated a rigid *per se* rule "that an allegation of willful infringement must depend upon pre-suit knowledge of the patent in issue." 950 F. Supp. 2d at 884. The court reasoned that to "conclude otherwise would lead to the anomalous result that every lawsuit alleging infringement could include a willful infringement claim based on simply the filing or the serving of the complaint." *Id.* The court also noted that the parties had not cited any cases where "post-suit knowledge was held sufficient to support a claim for willful infringement." *Id.*

*Rembrandt*'s reasoning is unpersuasive and inapplicable to the circumstances here. Contour's willful infringement claim is not "based on simply the filing or the serving of the complaint." Defendants are continuing to willfully infringement the patents-in-suit despite knowing all about them. Further, the complaint has been supplemented to specifically allege that GoPro learned of the patents-in-suit, at the latest, when it was served with an earlier version of

the complaint. Allowing Contour to proceed on its claim is therefore not anomalous, but rather avoids giving Defendants a "strange reward" for continuing to willfully infringe the patents-in-suit. *See MyMedicalRecords*, 1 F. Supp. 3d 1020. Further, as shown above, there are several well-reasoned cases holding that post-suit knowledge is sufficient to support a claim for willful infringement.

Accordingly, the Court should not dismiss Contour's claims for indirect or willful infringement based on Defendants' arguments that rely upon the false premise that pre-suit knowledge of the patent-in-suit is allegedly required to state a claim.

## 2. Plaintiff Has Adequately Pled Direct Infringement.

Claims for induced and contributory infringement require an underlying act of direct infringement. *In re: Bill of Lading*, 681 F.3d at 1333. Relying on *Twombly and Iqbal*, Defendants argue that Contour has allegedly pled insufficient facts to "support a reasonable inference that direct infringement has occurred." (Def. Mem., p. 10.) In particular, Defendants contend that Plaintiff has not alleged facts identifying an "alleged infringing use" or identified the parties whose infringement the defendants are inducing or contributing to. (Def. Mem., pp. 9, 10, 12.) Defendants' argument lacks merit.

To begin, Defendants are once again relying on a false premise. The false premise here is that, according to Defendants, the *Twombly/Iqbal* pleading standard governs allegations of direct infringement. It does not, according to both the Federal Circuit and this Court. *See Bill of Lading*, 681 F.3d at1333-34; *Driessen I*, 904 F. Supp. 2d at 1199-1200. In *Bill of Lading*, a district court dismissed claims of indirect infringement because the plaintiff had not "plead specific facts plausibly establishing that direct infringement has occurred or is occurring." On

appeal, the defendant argued that the "conclusory allegations" of underlying direct infringement were insufficient, relying upon *Twombly* and *Iqbal*. The Federal Circuit disagreed and reversed.

In so doing, the Federal Circuit distinguished *Twombly* and *Iqbal* because neither of those cases "address[ed] the sufficiency of a complaint alleging patent infringement, or causes of action for which there is a sample complaint in the Appendix of Forms to the Federal Rules of Civil Procedure." *Bill of Lading,* 681 F.3d at 1334. As the court noted, Form 18 of the Federal Rules of Civil Procedure sets forth a sample complaint for direct infringement that requires only:

> 1) an allegation of jurisdiction; 2) a statement that the plaintiff owns the patent; 3) a statement that defendant has been infringing the patent by making, selling, and using [the device] embodying the patent; 4) a statement that the plaintiff has given the defendant notice of its infringement; and 5) a demand for an injunction and damages.

*Id.* (citation and internal quotation marks omitted). Concluding that Form 18 trumps *Twombly* and *Iqbal* for purposes of pleading direct infringement, the Federal Circuit stated as follows:

> Federal Rule of Civil Procedure 84 states that "the forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." Fed.R.Civ.P. 84. The language of Rule 84 and the Advisory Committee Notes make "clear that **a pleading, motion, or other paper that follows one of the Official Forms cannot be successfully attacked."** [cit. om.] As the Supreme Court has noted, moreover, any changes to the Federal Rules of Civil Procedure "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." [Cit. om.]. Accordingly, to the extent the parties argue that *Twombly* and its progeny conflict with the Forms and create differing pleadings requirements, the Forms control. *See McZeal*, 501 F.3d at 1360 (Dyk, J., concurring-in-part and dissenting-in-part) (acknowledging that, **while the bare allegations contemplated by Form 18 appear deficient under *Twombly*, we are "required to find that a bare allegation of literal infringement in accordance with Form [18] would be sufficient under Rule 8 to state a claim**."). Thus, **whether R+L's amended complaints adequately plead direct infringement is to be measured by the specificity required by Form 18**.

*Id.* (emphasis added).

Under this standard, it is improper for Defendants to "focus [their argument] on whether the amended complaint['s] allegations of direct infringement contain sufficient factual detail to withstand attack under *Twombly* and *Iqbal*." As the Federal Court emphasized, "[w]hen compared to the requirements of Form 18, [that] argument is premised on a pleading standard that is too stringent." *Id*. at 1335.

As shown by Form 18, "bare allegations" of direct infringement suffice, and it is not necessary, for example, for a plaintiff to "plead facts establishing that each element of an asserted claim is met," "identify which claims it asserts are being infringed," or identify a specific direct infringer so long as the facts plead to "allow an inference that at least one direct infringer exists." *Id*. at 1335, 1336; *Driessen I*, 904 F. Supp. 2d at 1202; *Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175-TJW, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011) (unpublished) (holding that plaintiff's complaint did not need to identify a specific third-party direct infringer to state a claim for indirect infringement).

Although Defendants cite both *Bill of Lading* and *Driessen I* in support of other propositions, Defendants ignore their lengthy discussions and well-reasoned holdings concerning Form 18's precedence over *Twombly* and *Iqbal*.  The Court can reasonably infer that Defendants did so because they could not put forth any colorable arguments as to why SSAC does not satisfy the minimal Form 18 pleading requirements.  On this issue of infringement,[4] Form 18's sole requirement is a bare allegation, e.g., "The defendant has infringed and is still infringing the Letters Patent by making, selling, and using [a device] that embod[ies] the patented invention . . . ."  (*See* Fed. R. Civ. P. Form 18.)

---

[4] Defendants do not take issue with Contour's allegations of jurisdiction, ownership of the patents, and other allegations in Form 18.

The SSAC far surpasses Form 18's requirements. The patents-in-suit are specifically identified in and attached to the SSAC. Further, although Form 18 does not require that infringing products be identified by name, the SSAC states that the infringing camera products include the GoPro's HERO3, HERO3+, and HERO4 cameras. (SSAC, ¶ 20.) It also alleges that these camera products infringe one or more claims of the patents-in-suit by themselves, (*id.*, ¶ 19), and in combination with the "GoPro app" software and/or camera mounts. (*Id.*, ¶ 21.) Further, the SSAC goes well beyond the requirement that it plead facts showing "one direct infringer exists" with the allegation that the parties who "engaged in direct infringement of the '954 and '694 Patents include, but are not limited to, end users, endorsers, suppliers, distributors, and resellers of the infringing products." (SSAC, ¶ 22.) Contour also alleges the direct infringers manufacture, use, sell, and offer to sell the infringing camera products. (*Id.*, ¶¶ 19-21.)

## C. CONTOUR HAS SUFFICIENTLY PLED EACH ADDITIONAL ELEMENT OF ITS INDIRECT AND WILLFUL INFRINGEMENT CLAIMS.

Contour's claims for indirect and willful infringement require certain additional elements beyond those discussed above. As set forth below, the SSAC pleads facts more than sufficient to satisfy federal pleading standards on these additional elements.

### 1. Induced Infringement.

In addition to elements of knowledge of the patents-in-suit and direct infringement, an induced infringement claim has the following two elements: the inducer "possessed specific intent [and] not merely . . . knowledge of the acts alleged" to induce; and "there was active inducement of the direct infringer." *Medtronic Vascular, Inc. v. Boston Scientific Corp.,* 348 F. Supp. 2d 316, 323 (D. Del. 2004). Contour's pleadings are sufficient in this regard.

The Court will recall that "the test for pleading under *Twombly* is sufficient facts that allow the court to *infer* that a claim is plausible." *Telecomm Innovations, LLC v. Ricoh Company, Ltd.,* 966 F. Supp. 2d 390, 394 (D. Del. 2013) (citing *Bill of Lading,* 681 F.3d at 1340) (emphasis added). As with any other claim, Plaintiff need not prove its case at the pleading stage. *See Bill of Lading,* 681 F.3d at 1339. "Fair notice" is sufficient. *See id.* at 1332 (quoting *Twombly*, 550 U.S. at 555).

Regarding the specific intent element, "[w]hile proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988). In this vein, the Supreme Court has held that "[e]vidence of active steps ... taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe[.]" *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936 (2005) (internal citations and quotation marks omitted);[5] *see also Wyeth v. Sandoz, Inc.*, 703 F. Supp. 2d 508, 519 (E.D.N.C. 2010) ("Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe[.]") (internal quotation marks and citation omitted).

In *Telecomm*, where a Delaware district court found the complaint sufficient to withstand a motion to dismiss, the plaintiff pled specific intent as follows:

> Each of the [d]efendants is, on information and belief, inducing infringement of one or more claims of the '519 patent by, without limitation, making, using, importing, selling and/or offering for sale the [a]ccused [i]nstrumentalities for use

---

[5] *Grokster* is a copyright case, but the Federal Circuit cites it for the standard in patent cases as well. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006).

by customers and others and also providing those customers and others with **technical support and services**, as well as detailed **explanations, instructions and information as to arrangements, applications and uses of the [a]ccused [i]nstrumentalities that promote and demonstrate how to use** the [a]ccused [i]nstrumentalities in a manner that would infringe the '519 patent.

Defendants specifically intended to induce infringement by [their] customers and others by at least the acts set forth in paragraph 16, knowing such acts would cause infringement . . .

*Telecomm,* 966 F. Supp. 2d at 395. In *Netgear, Inc. v. Ruckus Wireless, Inc.,* 852 F. Supp. 2d 470 (D. Del. 2012), the plaintiff alleged even fewer specifics:

Ruckus has knowingly induced infringement of the '035 patent with specific intent to do so by its activities relating to the marketing and distribution of its ZoneDirector, FlexMaster, and/or ZonePlanner produts to manage the use of ZoneFlex products.

*Id.* at 475-76. Again, though, this was enough. *See also Nomadix, Inc. v. Hospitality Core Servs. LLC,* No. CV 14-08256 DDP (VBKx), 2015 WL 1525537, at *3 (C.D. Cal. Apr. 3, 2015) (unpublished) (on the issue of specific intent, where the complaint alleged that defendant provided instructions on use of patented features and trained employees to assist others in use of patent-protected features, the complaint withstood a motion to dismiss).

Here, Defendants mischaracterize Plaintiff's allegations by cherry-picking one short sentence from the SSAC and asserting that that lone sentence is insufficient to plead specific intent. The sentence they highlight is this: "[GoPro] has induced and continues to induce others . . . to directly infringe the [Patents-in-Suit] by requiring one or more of the Doe Defendants to manufacture, use, sale [sic] and/or offer for sale the infringing products." (*See* SSAC, ¶ 17.) Defendants omit any reference to paragraph 24, which states as follows:

GoPro and one or more of the other Defendants **advertise, demonstrate and/or recommend infringing uses and/or provide instruction** on how to engage in infringing uses of the infringing products through various forms and by various

27

means, including but not limited to ***advertisements, websites, videos, product brochures and product manuals.*** …

(SSAC, ¶ 24) (emphasis added).

Paragraph 26 then alleges:

GoPro actively induces infringement of at least one claim of the [patents] by inducing infringing use of the cameras with wireless capability with the GoPro App by, inter alia, ***instructing others how to engage in infringing uses (e.g., on websites, Facebook pages, product manuals and other media) and by entering into, performing, and requiring performance under manufacturing, endorsement, supply, distribution, and/or reseller agreements with others*** including one or more of the other Doe Defendants that require use of the GoPro App in combination with the cameras with wireless capability.

(Emphasis added.) The reasonable inference to be drawn from these allegations is that GoPro specifically intended to induce infringement, because these allegations certainly constitute "[e]vidence of active steps . . . taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use." *Metro–Goldwyn–Mayer,* 545 U.S. at 936. There is no requirement for greater specificity, and GoPro cannot credibly deny that it knows it has a website, Twitter, Facebook page and other accounts where it instructs others how to engage in infringing uses of the GoPro cameras and GoPro App. (*See* Background, ¶¶ 18-28.)

### 2. Contributory Infringement.

Aside from the elements of knowledge of the patent and direct infringement previously discussed, a contributory infringement claim has the following two additional elements: (1) that the component has no substantial non-infringing uses, (2) and that the component constitutes a material part of the invention. 35 U.S.C. § 271(c); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). Plaintiff has pled sufficient facts to satisfy these elements.

###### a.     The Components at Issue Have No Substantial Non-Infringing Use.

Defendants argue that the SSAC fails to establish that there were no non-infringing uses of the subject products or components.  In *Bill of Lading*, cited by Defendants, the court dismissed the plaintiff's claim for contributory infringement because in the complaint itself, the plaintiff had conceded that there were non-infringing uses of the subject products.  681 F.3d at 1338.  Here, Defendants assert that, as in *Bill of Lading*, the SSAC itself concedes that there are non-infringing uses of the infringing products.  There are several problems with this argument.

First and most obviously, the argument runs afoul of the Court's standards on a motion to dismiss.  In this regard, Defendants quote the SSAC's allegation that one or more of the defendants advertises and instructs "how to engage in infringing uses of the infringing products," then argue that "[a] reasonable inference drawn from this allegation is that there must be non-infringing uses of the accused products."  (Def. Mem. at p. 13.)  This assertion should be rejected out of hand because it turns procedural mandate on its head.  This Court must draw every inference in *Plaintiff's* favor, and simply cannot indulge inferences going the other way.  *See Ruiz, supra,* 299 F.3d at 1181.

But additionally, Defendants even ignore this Court's own precedent on the matter of pleading contributory infringement.  In 2012, this Court found dismissal appropriate because the complaint at issue did not "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."  *Driessen I,* 904 F. Supp. 2d 1196.  But 10 months later, on motion for reconsideration, the Court vacated its prior ruling, stating as follows:

> The court agrees with Plaintiffs' argument that *In re Bill of Lading* does not
> establish a requirement for plaintiffs to plead a null set under the plausibility

standard of *Twombly* and *Iqbal*—***that it is impossible to "plead with specificity
something that does not exist" and that such an outcome is therefore
"illogical."*** (Pls.' Rule 46 Obj. 5 [Dkt. No. 173].)  Accordingly, the court finds
that *In re Bill of Lading* requires Plaintiffs to affirmatively plead no substantial
non-infringing uses.  ***Where Plaintiffs have not undermined that allegation with
allegations of other substantial non-infringing uses elsewhere in the Complaint,
as in In re Bill of Lading, the court has no basis to find, as in In re Bill of
Lading, that Plaintiffs have not alleged no substantial non-infringing uses
sufficiently for the court to draw a plausible inference of contributory
infringement.***

*Driessen II*, 2013 WL 4501063, at \*2 (emphasis added); *see also Nielsen Co. (US), LLC v.
comScore, Inc.*, 819 F. Supp. 2d 589, 602 (E.D. Va. 2011) ("[A] component either has or does
not have a substantial noninfringing use.  Particularly in light of the necessarily negative nature
of this allegation—i.e., that the accused components have *no* substantial noninfringing use—it is
difficult to conceive how such an allegation could have been more *factually* detailed.")
(emphasis in original).

Here, unlike in *Bill of Lading*, there is nothing in the SSAC that alleges the existence of
non-infringing uses.  To the contrary, the SSAC alleges that GoPro advertises and instructs how
to engage in "infringing" uses of the infringing products.  (SSAC ¶¶ 59, 79.)  The SSAC goes on
to directly allege:

> The GoPro cameras with wireless capability are especially made and/or especially
> adapted for use with the claimed invention of at least one claim of the '954 Patent
> and at least one claim of the '694 Patent ***and are not a staple article or
> commodity of commerce suitable for substantial non-infringing use.*** (¶ 27.)

As the Court noted in *Driessen II*, it would be impossible to plead a null set with any greater
specificity.  These allegations suffice.

**b.** **Defendants Offer to Sell or Sell a Material Component of the Invention.**

Next, Defendants assert that in the SSAC, Plaintiff does not identify the invention at issue, nor any "material component" specific to a claim for contributory infringement. In suggesting that more specificity is required, Defendants again miss the mark. Courts do not apply more than a notice-pleading standard with regard to the nature of the "material component" or the invention. *E.g., EmeraChem, Holdings, LLC v. Volkswagen Grp. of Am., Inc.,* No. 3:14-CV-132-PLR-HBG, 2014 WL 5795027, at *3 (E.D. Tenn. Nov. 6, 2014) (unpublished); *Nielsen Co. (US), LLC v. comScore, Inc.,* 819 F. Supp.2d at 602.

As to the matter of materiality, the court in *Nielsen* stated:

[A]lthough the First Amended Complaint's allegations in this connection are admittedly spare, it is difficult to imagine a manner in which they could have been pled with greater factual detail. Put succinctly, what facts would there be to allege? A component either is or is not material to a system; plaintiff claims that

the allegedly infringing software components are material to the systems in the '722 patent.

*Id.* at 602.

Here, the SSAC specifically identifies the infringing products as "camera products ('infringing products'), including the HERO3, HERO3+ and HERO4 cameras ('cameras with wireless capability')." (SSAC, ¶ 20.) *See Bel Fuse Inc. v. Molex Inc.,* 27 F. Supp. 3d 557, 563 (D.N.J. 2014) (requiring only identification of infringing "product lines" to plead infringement); *cf. Mark IV Indus. Corp. v. Transcore, L.P., C.A.* No. 09-418 GMS, 2009 WL 4828661, at *3 (D. Del. Dec. 2, 2009) (unpublished).

The SSAC further identifies certain "software (the 'GoPro App') and/or camera mounts . . . that when use in combination with the GoPro cameras with wireless capability infringe, either literally or under the doctrine of equivalents, at least one claim of the '954 Patent and at least one claim of the '694 Patent." (SSAC, ¶ 21.) The SSAC goes on to allege that:

> GoPro and one or more of the other Defendants make, use, sell and/or offer to sell **components, including but not limited to cameras, camera accessories and/or the GoPro App that** are part of at least one claim of the '954 Patent and at least one claim of the '694 Patent and which have no substantial non-infringing uses.

(¶ 24 (emphasis added).)

And finally, paragraph 63 states:

> GoPro, Camp Saver and one or more of the Doe Defendants have committed and continue to commit acts of contributory infringement of the '954 Patent in violation of 35 U.S.C. § 271(c) *et seq*., by, *inter alia*, offering to sell and selling **components that are a material part of the claimed invention** and which have no substantial non-infringing uses, knowing that the components are especially made or especially adapted for use in a direct infringement of the '954 Patent.

(Emphasis added.) Taken together, these paragraphs sufficiently identify the material components at issue, and allege that such components are, in fact, material.

### 3. Plaintiff Has Adequately Pled Willful Infringement.

Finally, Defendants allege that Plaintiff has inadequately pled willful infringement. Specifically, they assert that plaintiff has failed to plead facts to support a plausible claim that they acted despite an "objectively high likelihood that its actions constituted infringement of a valid patent." *See In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Defendants' argument is without merit.

Defendants cite *Seagate* for pleading standards respecting the willful infringement claim. However, the court in *Seagate* did not address pleading standards, but instead addressed what

would be necessary for a plaintiff to succeed at trial. *See generally id.* at 1355; s*ee also Sony Corp. v. LG Electronics U.S.A., Inc*., 768 F. Supp. 2d 1058, 1064 (C.D. Cal. 2011) (declining to apply *Seagate*'s standards at pleading stage); *Milwaukee Elec. Tool Corp. v. Hitachi Koki, Ltd.*, No. 09-C-948, 2011 WL 665439, at *3 (E.D. Wis. Feb. 14, 2011) (unpublished) ("Although the defendants properly assert that *Seagate* sets forth the standard for establishing willful infringement, the defendants fail to recognize that *Seagate* is not controlling for purposes of pleading under Fed.R.Civ.P. 8(a)").

All that is required at the pleading stage is for a plaintiff to allege that the defendant was aware of the subject patent, had actual notice of the infringement claims, and continued to engage in infringing activities. *See id*; *Medtrica Solutions, Ltd. v. Cygnus Med., LLC*, No. C12-538RSL, 2012 WL 5726799, at *1 (W.D. Wash. Nov. 15, 2012) (unpublished) ("To survive a motion to dismiss under Rule 12(b)(6), the Court finds that Cygnus is not required to allege specific facts establishing that Medtrica acted with objective recklessness. The allegations that Medtrica has had notice of the ′ 023 Patent since 2011 and has continued to make and sell the Appli–Kit and Revital–Ox…are sufficient to 'make out the barest factual assertion' to state a claim for willful infringement[.]") (citation omitted); *see also MyMedicalRecords,* 1 F. Supp. 3d 1020; *OpenTV,* 2015 WL 1535328.

Here, as discussed at length above, Plaintiff has met these requirements.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

DATED this 29th day of May, 2015.

BURBIDGE MITCHELL & GROSS
215 South State Street, Suite 920
Salt Lake City, Utah 84111

MORRISS O'BRYANT COMPAGNI, P.C.
734 East 200 South
Salt Lake City, Utah 84102


By:   /s/ Richard D. Burbidge
        *Attorneys for Plaintiff*

Plaintiff's Memorandum In Opposition To GoPro & Camp Saver's Joint Motion To Dismiss Plaintiff's Claims For Indirect and Willful Infringement

## Civil No. 2:14-cv-00864-DBP

**Exhibits 1-22**

Ex. 1        Return of Service: GoPro  (Dkt. No. 7)

Ex. 2        Proof of Service: Camp Saver (Dkt. No. 30)

Ex. 3        Screenshot of GoPro.com "Lines of Cameras"

Ex. 4        User Manual HERO3 Silver

Ex. 5        User Manual HERO3+ Black

Ex. 6        User Manual HERO4 Black

Ex. 7        Screenshot of homepage of GoPro.com

Ex. 8        Screenshot of GoPro App web page

Ex. 9        Screenshot of GoPro Twitter.com page

Ex. 10       Screenshot of GoPro Twitter.com postings

Ex. 11       Screenshot of GoPro Twitter.com postings

Ex. 12       Screenshot of GoPro's Twitter postings

Ex. 13       Screenshot of GoPro's Twitter post & picture: #GoProChat

Ex. 14       Screenshot of GoPro's Twitter postings: Little League

Ex. 15       Screenshot of San Diego - CBS 8: Little League (*video embedded*)

Ex. 16       Screenshot of GoPro's Facebook page

Ex. 17       Screenshot of GoPro's Facebook post

Ex. 18       Screenshot of GoPro's YouTube homepage

Ex. 19       Screenshot of GoPro's YouTube: Video Tutorial Page

Ex. 20       Relevant pages from '954 and '694 Petitions for *Inter Partes* Review

Ex. 21       Relevant pages from 2009 GoPro Catalog

Ex. 22       Disc of Video A (¶25) Video B (¶28)